## JONES *vs.* THE STATE OF GEORGIA.

1. Where counsel who had been representing the defendant in a murder case, announced when it was called for trial that he no longer represented the prisoner, and counsel then appointed by the court announced that they were not prepared for trial, that although they had appeared at the committing trial by request of the justice, they had dismissed the case from their minds, and the evidence being entirely circumstantial, they did not feel that they could do justice to the prisoner, a postponement to a later day should have been granted, although the former counsel consented to assist in the defense as far as his strength would permit, he being unwell.

2. Before confessions can go to the jury at all, the court must hear and adjudge whether they were freely and voluntarily made. If he so decides, then they go to the jury only *prima facie* as having been so made. Therefore, where they are ruled in, no harm can come to the defendant from the jury's having heard the preliminary examination by the court. *Aliter*, had they proved inadmissible.

3. It was a substantial compliance with the act of 1878–9, which provides that the jury may believe the prisoner's statement in preference to the testimony of witnesses, to charge that the jury might treat the statement as they did the testimony of any witness, believing it all, or part, or none, as they should see fit—that it should have such force as the jury thought right to give it.

4. A charge not warranted by the evidence should not be given.

(*a*.) What is or is not sufficient to establish a disputed fact is a question exclusively for the jury.

5. Where a charge, though apparently improper when abstracted from its context, when considered in connection therewith is legal and proper, it is not ground for a new trial.

6. Where a case depended on circumstantial evidence, there was no objection to counsel for the defendant using in argument " Phillips' Remarkable Cases of Circumstantial Evidence," nor in counsel for the state seeking to break the force and effect thereof by characterizing it as mere romance or fiction. The court, however, should not express

an opinion on the subject, but should charge the jury what princi-
ples applicable to the case should influence and guide them in
reaching a verdict.

7. The court should charge principles, not facts. It was therefore
wrong to read to the jury from a volume of the supreme court re-
ports of this state the statement that "juries are generally too reluc-
tant to convict on circumstantial evidence."

8. In all cases of felony a charge in writing may be required at the
instance of either party, and when so written out and read to the
jury, it becomes an office paper, is to be filed with the clerk of the
court, and shall be accessible to all persons interested in the same.
If a written charge is not required, it is no ground of error that it
was not written or filed.

9. We express no opinion on the newly discovered evidence or the
weight of the evidence, as there is to be a new trial on other
grounds.

Criminal law. Continuance. Practice in the Superior
Court. Charge of Court. Before Judge SNEAD. Rich-
mond Superior Court. April Term, 1880. .

Reported in the decision.

F. W. CAPERS; M. P. CARROLL; WM. E. JACKSON, Jr.,
for plaintiff in error.

SALEM DUTCHER, solicitor-general; H. D. D. TWIGGS,
for the state.

CRAWFORD, Justice.

The plaintiff in error was charged with the crime of
murder, in that on the fifteenth day of December, 1879,
he killed one John G. Haralson; he was tried in May
thereafter, found guilty by the jury, moved for a new trial,
which the court refused, and he excepted.

. 1. The first error complained of was the refusal of the
court to grant him a continuance, or to postpone the trial
of the case to some later day during the same term.

Messrs. William E. Jackson and F. W. Capers, who had

v 65—33

been appointed by the court to represent the prisoner, in support of their motion showed that Davenport Jackson, Esq., who had been prisoner's counsel, announced when the case was *called for trial*, that he no longer represented the defendant, of which fact he was ignorant until Mr. Jackson withdrew; that as counsel appointed by the court they were unwilling to proceed with the trial, the testimony being entirely circumstantial; and although they had appeared by request of the justice of peace as counsel on the preliminary examination, that they had dismissed the consideration of the case from their minds, and were totally unprepared to try it; being appointed as they were, after the calling of the case, they felt themselves unable to do justice to the prisoner.

We must confess that this appears to us to be such a showing as entitled the newly appointed counsel to a later day in the term, to look into, and prepare more thoroughly their defense for one who was to be placed upon trial for his life, notwithstanding the fact that Mr. Davenport Jackson consented to assist them as far as his strength would permit. Such a responsibility, so suddenly cast upon a conscientious attorney, might well force him to ask indulgence for preparation, or that he might be spared the fearful risk of the conviction of his client on account of his inability to command, under the emergency upon him, such grounds of defense as the accused really had.

We could not undertake to say what length of time should have been allowed, but certainly a sufficient time for the counsel to consider and consult as to what might be done to defend a man in such extremity, and if no deliverance were possible for him, then with that fidelity so honorably manifested by the profession, to have seen to it that he was condemned only according to law.

2. That the court did not retire the jury pending the examination of the witness King touching certain statements said to have been made to him by the prisoner.

The questions put to the witness in the presence of

the jury were: Did the defendant make any statement in reference to the crime alleged against him? and, were these statements freely and voluntarily made? We do not think that these questions fall within the ruling of *Hall vs. The State*, decided at the February term, 1880. An examination of that case will show that this court, after an elaborate statement of what transpired in the presence of the jury, held "that when such preliminary examinations as this are to be had, that the better practice is, and impartial justice demands, that the jury should be retired from the box whilst the admissibility of the evidence is considered by the court. When he has ruled upon it, let the jurors be brought in and the cause proceed, with such further rights as the law gives the prisoner upon his confessions."

Before confessions can go to the jury at all, the court must hear and adjudge whether they were freely and voluntarily made; if he so decide, then they go *prima facie* only to the jury, as having been so made. Therefore, where they are *ruled in*, as in this case, no harm comes to the defendant; but where they are heard by the jury and *ruled out*, the difficulty of their dislodgment is too great to be incurred.

But in this case there was no such examination as is set out in *Hall vs. The State*, nor after being had was there any testimony ruled out.

· 3. Because the court charged the jury as follows: " The jury may treat the defendant's statement as they do the testimony of any witness; that is, they may believe it all, or they may disbelieve it all; they may believe one part and disbelieve another, as they in their judgment may see fit. The law is that the statement is to have such force only as the jury may think right to give it." The error complained of in this charge is that it did not correspond more nearly with the act of 1878–9 in reference to the credibility which might be given to such statements. The act alluded to gives the jury the right to be-

lieve it in preference to the testimony of the witnesses. The judge said to the jury that they might treat it as they did the testimony of any witness—that they might believe it all, or part or none, which, in our judgment, was quite sufficient.

4. Because the court erred in charging the jury that the confession of the defendant that he was at the store of J. G. Haralson, deceased, at 10 o'clock on the night of the homicide, is sufficient to establish the fact that he was there at that hour.

There are two legal objections to this charge : The first is, that whilst the testimony, all taken together, may be sufficient to warrant *the jury* in reaching the conclusion that the prisoner was there that night, at that hour, it is hardly sufficient to authorize the charge in the language used. The second is, that what is, or is not sufficient to establish a disputed fact, is a question which, under the law, must be left exclusively to the jury.

5. Because of the following charge :

"In defining what is sufficient evidence, the law uses these words : Sufficient evidence is that which is satisfactory for the purpose. When the purpose is to ascertain whether a defendant is guilty of a crime charged against him, sufficient evidence is that which satisfies the jury of the defendant's guilt. If the evidence satisfies the jury, it is sufficient under the law, and if it does not satisfy them, it is not sufficient under the law."

The objection urged to this charge is, that it should have added the words "beyond a reasonable doubt." Taking it, however, in its proper connection, it is not error, as it appears to have been given in defining competent, sufficient, direct or circumstantial evidence; and besides, the jury was charged as to reasonable doubts in other parts of the instructions given by the court.

6. "That the jury must not be influenced, guided by, or accept as law in this case any imaginary cases taken from works of romance."

This charge became important in view of the fact that the state's counsel ridiculed " Phillips' Remarkable Cases of Circumstantial Evidence " as mere romance or fiction, prisoner's counsel having read and commented on certain extraordinary cases therein to be found.

We see no objection to the use by counsel, in their arguments before the juries, of this work, nor on the other hand do we see any reason why, in reply, the opposing counsel might not break the force and effect thereof by characterizing it as was done in this case. If when the judge comes to instruct the jury on the law, he should have reason to believe that they were likely from any cause to be misled in reference thereto, it would be his duty to state to them what principles, applicable to the case, were to influence and guide them in reaching a verdict.

7. Because the court erred in pronouncing a eulogy upon Judge McDONALD, and in direct connection therewith, read from his opinion delivered in the case of *Newman vs. The State*, 26 *Ga.*, 637, wherein he says, " Juries are generally too reluctant to convict on circumstantial evidence," and then read the law laid down by him in the remainder of the paragraph, but to which no objection is made. Upon this exception, we think the same is well taken, because the judge should give principles only and not facts in charge to the jury. What is here stated was never intended as anything more than a fact, and as such was not proper to have been given to the jury in a charge, as it was calculated to affect their minds adversely to the interests of the prisoner. Whilst we would not hold it sufficient to authorize the grant of a new trial, we think that it should have been eliminated from the principle charged.

8. Because the court erred in not filing his charge with the other papers as part of the record in the case, after he had reduced the same to writing, though not at the request of counsel on either side.

A charge in writing may be required at the instance of either party, and when so written out and read to the jury, it becomes an office paper, is to be filed with the clerk of the court, and shall be accessible to all persons interested in the same. The counsel not having brought himself within the statutory right granted him, cannot claim more in reference to this paper than the judge is willing to concede. The failure to file or to furnish the charge was a question resting solely with him, and therefore he committed no legal error as alleged in this ground of the motion for a new trial.

As this case is to be remanded for a new trial, we express no opinion as to the matter of the newly discovered evidence, nor as to whether the verdict is contrary to evidence.

Judgment reversed.